

4 Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3613 | **DATE** | 7/11/2003 |
| **CASE TITLE** | John Cora and Cora Imports, Ltd. vs. Rancilio Macchine Per Caffe' S.p.A. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■  [Other docket entry]  ENTER MEMORANDUM OPINION AND ORDER: Rancilio's Motion for Summary Judgment is GRANTED as to Counts I, II, III and IV. Plaintiffs' complaint is dismissed in its entirety.

(11) ■  [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| ✓ | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

WAP  courtroom deputy's initials

number of notices

JUL 1 4 2003
date docketed

docketing deputy initials

date mailed notice

mailing deputy initials

**Document Number**

42

U.S. DISTRICT COURT
CLERK
03 JUL 11 PM 4:28

FILED TO

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT **FILED**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
JUL 1 1 2003

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

JOHN CORA and CORA IMPORTS,
LTD.,

                 Plaintiffs,

       v.

RANCILIO MACCHINE PER CAFFE'
S.p.A.,

            Defendant.

Case No. 01 C 3613

Hon. Harry D. Leinenweber

**DOCKETED**

JUL 1 4 2003

## MEMORANDUM OPINION AND ORDER

Plaintiffs John Cora ("Cora"), an Illinois resident, and Cora Imports, Ltd. ("Cora Imports"), an Illinois corporation with its principal place of business in Burr Ridge, Illinois, brings this diversity suit against Rancilio Macchine Per Caffe' S.p.A. (hereinafter, "Rancilio" or "the Company"), an Italian corporation with its principal place of business in Milan, Italy, asserting claims for promissory estoppel, quantum meruit, breach of oral contract, and unjust enrichment. Rancilio brought a three-count counterclaim against Cora Imports, alleging breach of contract, open account, and unjust enrichment. On October 26, 2001, the Court granted Plaintiffs' motion to dismiss the breach of contract count, Count I, of Defendant's counterclaim. Presently before the Court is Rancilio's Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 on each of the four counts of

Plaintiffs' complaint. For the following reasons, the Court grants the motion on all counts.

## I. BACKGROUND

John Cora is the Chief Executive Officer ("CEO") and sole owner of Cora Imports, a company that, among other things, imports coffee espresso machines and related equipment. Cora is also the current sole owner of Cora Italian Specialties, Inc. ("Italian Specialties"), a company incorporated by Cora and a former partner in the late 1980s as a dealer of imported products. Italian Specialties is not a party to this action. For more than thirty years, Cora and Cora Imports had developed and maintained a business relationship with Rancilio, an Italian corporation that manufactures and exports espresso machines. Since the incorporation of Italian Specialties, Cora imported Rancilio's products through Cora Imports and distributed them to end-users and dealers through Italian Specialties.

The parties agree that in 1994, Plaintiffs assisted Rancilio with the establishment of an office-showroom in Chicago, however, they contest much of the remaining factual background. According to Plaintiffs, the office-showroom was the first step toward the creation of a United States subsidiary in which Cora would play an important and profitable role. They allege that in early 1993, the then-president of Rancilio, Roberta Rancilio, directed Cora to lease and set-up the Chicago showroom to facilitate the development

of a Rancilio subsidiary in the United States. In return for his assistance, Plaintiffs claim that Ms. Rancilio promised to make Cora CEO of the United States subsidiary and to give him a share of its profits if she gained approval for the new entity. Plaintiffs concede that Ms. Rancilio cautioned that the Rancilio statute did not provide for the formation of a subsidiary, that she alone lacked the authority to agree to form a subsidiary and required the support of the board of directors and shareholders of Rancilio, and that there was a chance that she would not obtain their approval for the venture. Nevertheless, Plaintiffs allege that with Ms. Rancilio's offer in mind, and at her request, Cora signed a lease for a showroom as John Cora d/b/a Rancilio USA, staffed the office with personnel from Cora Imports, furnished the office, and doubled his warehouse space in order to store Rancilio equipment. He also opened a bank account as John Cora d/b/a Rancilio USA and advanced money to the office for its daily operations. Plaintiffs contend that these efforts continued under Carlo Tajana, whom they assert replaced Roberta Rancilio as president of Rancilio in January 1996. Finally, in March 1999, Cora formed the Illinois corporation, Rancilio USA, allegedly to facilitate the creation of the new entity.

The long-awaited United States subsidiary was realized the following month, when Rancilio incorporated Rancilio North America, Inc. in Illinois. Despite Roberta Rancilio's alleged assurances, however, Rancilio completed the incorporation without Cora's

- 3 -

involvement and gave Cora neither the CEO position of the resulting entity nor access to any potential profit. Plaintiffs allege that not only did Rancilio breach its agreement with Cora, but that Rancilio failed to pay for some of the expenses that Cora incurred in preparing for the subsidiary.

Rancilio denies that Roberta Rancilio made any promises to Cora concerning the United States subsidiary and contends that even if Ms. Rancilio did make such promises, she made it clear to Cora that she lacked the authority to bind Rancilio to them. The Company explains that its board of directors, which chooses a president from its members, must approve any delegation of power to that president. According to the Minutes of the Meeting of the Board of Directors held on June 21, 1991 ("June 21, 1991 Minutes"), the board of directors elected Roberta Rancilio president and gave her various, specific signatory powers for the day to day operations of the Company, which she retained until she resigned as president and member of the board of directors on March 1, 1996. Rancilio contends that none of those powers included the authority to enter into the alleged agreement with Plaintiffs and that the board of directors neither conferred that authority upon her nor approved the alleged agreement.

While Rancilio agrees that it opened the office-showroom with Plaintiffs' assistance, it also denies that it failed to pay Plaintiffs for any expenses that they incurred in setting up the office-showroom. The Company contends that Plaintiffs invoiced

- 4 -

Rancilio for their costs and that it either paid the invoices or applied the outstanding amount against amounts that Plaintiffs owe Rancilio for Rancilio equipment.

## II. SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if it could affect the outcome of the suit under the governing law; a dispute is "genuine" where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The burden is initially upon the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In assessing the movant's claim, the court must view all the evidence and any reasonable inferences that may be drawn from that evidence in the light most favorable to the nonmovant. *Miller v. Am. Family Mut. Ins. Co.,* 203 F.3d 997, 1003 (7th Cir. 2000). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations" contained in its pleading, but rather "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir.

1990); *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir. 1989). It "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Accordingly, summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. In such a situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

### III. __CHOICE OF LAW__

The initial issue for this Court is whether Illinois or Italian law governs in this diversity case. Rancilio does not contend that Italian law should govern the primary causes of action in this case and relies upon Illinois law in its analysis. As a result, this Court will apply Illinois law in analyzing the four counts. *See Checkers, Simon & Rosner v. Lurie Corp.,* 864 F.2d 1338, 1345 (7th Cir. 1988)("[W]hen . . . the parties do not say that the forum state's conflict-of-laws rules require the application of another state's substantive law . . . we must apply the forum state's substantive law.").

Rancilio does argue that Italian law should govern the agency issues at hand, although it relies upon Illinois agency law because of its similarities to Italian law. As a result, this Court will undertake a brief assessment of which law should apply. A federal court, sitting in Illinois and exercising diversity jurisdiction must apply Illinois's choice of law rules. *FASA Corp. v. Playmates Toys, Inc.*, 869 F. Supp. 1334, 1343 (N.D. Ill. 1994)(citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). As Rancilio notes, it appears that Illinois has not yet articulated a rule governing choice of law in the agency context. After a thorough analysis, however, Judge Castillo of this District predicted that the Supreme Court of Illinois would adopt the RESTATEMENT (SECOND) OF CONFLICT OF LAW (1971) for determining the applicable law in agency cases. *FASA*, 869 F. Supp. at 1343-44. The Court agrees with Judge Castillo's reasoning and will also rely on the RESTATEMENT (SECOND) in determining whether to apply Italian or Illinois law.

Section 292 of the RESTATEMENT (SECOND) reads as follows:

(1) Whether a principal is bound by action taken on his behalf by an agent in dealing with a third person is determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the parties and the transaction under the principles stated in § 6.

(2) The principal will be held bound by the agent's action if he would so be bound under the local law of the state where the agent

> dealt with the third person, provided at least
> that the principal had authorized the agent to
> act on his behalf in that state or had led the
> third person 'reasonably to believe that the
> agent had such authority.

RESTATEMENT (SECOND) OF CONFLICT OF LAW § 292.

Roberta Rancilio's alleged agreement with Cora concerned the establishment of an office-workroom in Chicago, Illinois and a United States subsidiary that would be incorporated in Illinois. Accordingly, Illinois is the state with the most significant relationship to the parties and the transaction. Moreover, Rancilio authorized Roberta Rancilio to act on its behalf in Illinois and, therefore, the Company had a reasonable relationship to that state. Contrary to Rancilio's assertions, it does not matter that Roberta Rancilio's alleged agreement with Cora was unauthorized by Rancilio. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAW § 292 cmt. d ("A principal who authorizes an agent to act on his behalf in a state assumes the risk that he will be held bound under the local law of that state by action, whether authorized or unauthorized, that is taken there by the agent on his behalf."). As a result, this Court will analyze whether Rancilio should be bound by Roberta Rancilio's actions under Illinois law.

### IV.  DISCUSSION

Three of Plaintiffs' claims, Count I (promissory estoppel), Count II (quantum meruit), and Count IV (unjust enrichment), sound in equity, while one claim, Count III (breach of oral contract),

sounds in law. Plaintiffs may only obtain relief on the equity claims in the absence of a contract. As a result, the Court will address the breach of oral contract claim first.

## A. Count III - Breach of Oral Contract

In their Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Response Brief"), Plaintiffs allege that Roberta Rancilio promised that Rancilio would reimburse and compensate them for their expenses, would make Cora CEO of the Rancilio United States subsidiary if it were approved, and would refrain from exploiting Plaintiffs' business to Rancilio's advantage in exchange for their work in establishing a United States office and presence for Rancilio. Plaintiffs' complaint contains no mention of Rancilio's alleged promise not to exploit Plaintiffs' business. A party "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). As a result, this Court will not permit Plaintiffs to alter the terms of the alleged agreement at this stage.

In order to establish a breach of contract cause of action, Plaintiffs must prove (1) that a valid and enforceable contract existed, (2) that they performed the contract, (3) that the Defendant breached the contract, and (4) that Plaintiffs suffered a resulting injury. *Werner v. Botti, Marinaccio & DeSalvo*, 563 N.E.2d 1147, 1153 (Ill. App. Ct. 1990). Rancilio addresses the

breach of contract claim separately with respect to each of the alleged promises, *viz.*, the promise to make Cora CEO of the United States subsidiary and the promise to reimburse Plaintiffs for the expenses they incurred in establishing a United States office. The Court will address each promise in turn.

### 1. The CEO Promise

Rancilio first argues that Ms. Rancilio lacked the authority to promise Cora the position of CEO of Rancilio's United States subsidiary and that the agreement is accordingly unenforceable and invalid. It further argues that the material terms in the alleged agreement between Ms. Rancilio and Cora were too uncertain and indefinite to permit the formation of a valid contract. Because Ms. Rancilio clearly had no authority to promise Cora the CEO position, this Court need not determine whether the terms of the contract were sufficiently definite and certain.

Plaintiffs, as the party seeking to bind Rancilio to Ms. Rancilio's promises, have the burden of proving agency and the scope of Ms. Rancilio's authority. *Yugoslav-American Cultural Ctr., Inc. v. Parkway Bank & Trust Co.*, 682 N.E.2d 401, 406 (Ill. App. Ct. 1997). They may prove either that Ms. Rancilio had actual or apparent authority to promise Cora the CEO position on Rancilio's behalf. *Amcore Bank, N.A. v. Hahnaman-Albrecht, Inc.*, 759 N.E.2d 174, 181 (Ill. App. Ct. 2001). In order to show actual authority, Plaintiffs do not have to establish that Rancilio

expressly gave Ms. Rancilio the power to make such a promise, but may instead demonstrate that such authority was inherent in Ms. Rancilio's position as president. *Id.* at 182-83. To prove apparent authority, they must show that Rancilio created the appearance that Ms. Rancilio had the authority to appoint Cora as CEO. *Yugoslav-American Cultural Ctr.*, 682 N.E.2d at 406.

Plaintiffs contend that Ms. Rancilio had both express and implied actual authority to promise Cora the CEO position. As evidence of Ms. Rancilio's express authority, Plaintiffs point to the June 21, 1991 Minutes, which indicate that Ms. Rancilio had signatory authority to "hire and terminate personnel of any level and qualification." Rancilio argues that this authority was limited to hiring and terminating personnel by and for *Rancilio*, and that it did not extend to hiring personnel for an entity that did not exist when the board gave Ms. Rancilio her powers.

Rancilio is correct. Express authority is found where the "principal explicitly grants the agent the authority to perform a particular act." *Amcore Bank*, 759 N.E.2d at 181. The June 21, 1991 Minutes gave Ms. Rancilio the authority to hire and terminate personnel for *Rancilio*, but they simply cannot be read as having given her the power to hire and terminate employees for an entirely separate entity that had not yet been incorporated. As Rancilio notes, Illinois law, which applies to Illinois corporations such as Rancilio North America, Inc., requires that officers "shall be

elected by the board of directors at such time and in such manner as may be prescribed by the by-laws." 805 ILL. COMP. STAT. ANN. 5/8.50 (West 2003). Only the subsidiary's board of directors, after the subsidiary was formed, would have had the authority to choose the subsidiary's officers or, perhaps, to delegate that authority.

The requirements of § 5/8.50 are also fatal to Plaintiffs' claim that Ms. Rancilio had implied authority to promise Cora the position of CEO. Plaintiffs argue that the president of a corporation typically has the authority to hire new employees and that it was reasonable for Cora to assume that Ms. Rancilio had authority to offer him the position of CEO. While it is true that parties who do business with a corporation "are entitled to assume that a chief executive is authorized to act for it," those parties are only entitled to such assumptions for transactions that "fall within ordinary bounds." *Evanston Bank v. Conticommodity Servs., Inc.*, 623 F. Supp. 1014, 1032 (N.D. Ill. 1985); *see also Sacks v. Helene Curtis Indus., Inc.*, 91 N.E.2d 127, 132 (Ill. App. Ct. 1950) ("It is well settled that a president of a corporation has no implied authority to make a contract on its behalf which is unusual and extraordinary."). By statute, a corporation's board of directors has the power to hire the corporation's officers. That power does not fall within the usual or ordinary bounds of a corporate president's authority.

There is also no merit to Plaintiffs' contention that Ms. Rancilio had apparent authority to promise Cora the CEO position. Apparent authority is "predicated on the principal's conduct," *not* that of the agent. *FASA*, 869 F. Supp. at 1346 n. 17 (collecting Illinois cases on apparent authority). In order to prove apparent authority, Plaintiffs must establish (1) that Rancilio consented to or knowingly acquiesced in Ms. Rancilio's exercise of authority; (2) that, based on the actions of both Ms. Rancilio and Rancilio, Plaintiffs reasonably concluded that Ms. Rancilio was Rancilio's agent; and (3) that Plaintiffs justifiably and detrimentally relied on Ms. Rancilio's apparent authority. *Amcore Bank*, 759 N.E.2d at 183. Plaintiff has adduced no evidence to meet the first prong of this test. Nothing in Plaintiffs' Response Brief indicates that Rancilio consented to or knowingly acquiesced in the alleged promise to make Cora CEO of the United States subsidiary. Plaintiffs state that in 1996, after Ms. Rancilio had resigned as president, Cora and Carlo Tajana of Rancilio discussed the agreement. The minutes of the meetings of the board of directors, however, indicate that Tajana was not even on the board until October 13, 1997, when he was also elected president. Moreover, according to Cora's deposition, he and Tajana never discussed Cora's promised appointment as CEO. Plaintiffs also contend that in 1998, Cora discussed a budget for the United States office with Bruno Pignattelli. Cora himself admits that Mr. Pignattelli was

only "the carrier of information." There is no evidence that Mr. Pignattelli had the authority to consent to or to acquiesce in Ms. Rancilio's alleged promise on Rancilio's behalf. Even if Mr. Pignattelli had such authority, Plaintiffs do not contend that he and Cora discussed the promised CEO position. Plaintiffs' remaining evidence, Cora's own actions, is simply irrelevant. "Only the words and conduct of the alleged principal . . . establish the agent's authority." *Id.* at 184. The fact that Plaintiffs took steps toward creating the subsidiary is not proof that Rancilio authorized these actions or, more importantly, that it authorized the promise to make Cora CEO of that subsidiary.

Ms. Rancilio lacked the authority to promise John Cora the CEO position in a Rancilio United States subsidiary. As a result, the alleged contract is unenforceable and Plaintiffs' breach of contract claim with respect to the putative CEO promise must fail.

## 2. Reimbursement and Compensation Claim

Rancilio does not dispute that Plaintiffs assisted with the establishment and maintenance of the United States office. Assuming *arguendo* that it contracted to reimburse Plaintiffs for their work, however, the Company denies that it breached the terms of any alleged contract.

Rancilio claims that Plaintiffs invoiced them for the expenses they incurred in setting up and maintaining the United States office and that it has paid all of these invoices with the

exception of $34,259. The Company asserts that it has withheld that payment as a set-off against the $64,129 that Cora Imports owes Rancilio, and which Plaintiffs are withholding as a set-off against the overall damages they seek in this action. Rancilio reasons that it owes Plaintiffs no additional payments because the amount Plaintiffs owes Rancilio exceeds the amount Rancilio owes Plaintiffs.

Plaintiffs do not address the issue of whether Defendants have breached the agreement to reimburse or compensate them in their discussion of the breach of contract claim. They fail to identify any services that Rancilio promised to pay for in the alleged contract that have gone uncompensated. The parties agree, moreover, that Rancilio paid all of the amounts invoiced by Plaintiffs with the exception of the $34,259 set-off. Indeed, Plaintiffs' list of damages, Cora Exhibit 11, "Losses Caused by Rancilio S.p.A. Due to Breach of Contract, Deceit and Unfair Competition" ("Exhibit 11"), lists the $34,259 set-off as the only damages related to unpaid office expenses. Even assuming that there was a contract for reimbursement, Plaintiffs have failed to establish that Rancilio breached the alleged promise to reimburse and compensate them for their efforts in setting-up and maintaining the United States office. For the reasons stated above, Defendant's motion for summary judgment is granted as to Count III.

## B. Count I - Promissory Estoppel

The doctrine of promissory estoppel is available only in the absence of a contract. *Ill. Valley Asphalt, Inc. v. J.F. Edwards Constr. Co.*, 413 N.E.2d 209, 211 (Ill. App. Ct. 1980). Plaintiffs allege that they reasonably and detrimentally relied upon both of Rancilio's alleged promises: (1) that Plaintiffs would be reimbursed and compensated for the expense they incurred in creating and maintaining Rancilio's United States office; and (2) that Rancilio would appoint Cora CEO of the United States subsidiary if it was formed. Because this Court analyzed the promise for reimbursement and compensation as though a contract existed, it will only assess whether Plaintiff may seek relief on promissory estoppel grounds with respect to the CEO claim.

In order to establish a claim for promissory estoppel Plaintiffs must show (1) that Rancilio made an unambiguous promise, (2) that Plaintiffs relied upon that promise, (3) that their reliance was expected and foreseeable by Rancilio, and (4) they suffered an injury as a result of their reliance. *Vincent DiVito, Inc. v. Vollmar Clay Prods. Co.*, 534 N.E.2d 575, 577 (Ill. App. Ct. 1989). Plaintiffs must also demonstrate that their reliance was reasonable and justifiable. *Id.* Rancilio argues that even if Ms. Rancilio made a promise to Cora regarding the CEO position, she lacked the authority to do so. As a result, Rancilio contends, Plaintiffs cannot establish that their reliance on Ms. Rancilio's

alleged promise was reasonable or expected and foreseeable. Rancilio also argues that Plaintiffs cannot demonstrate that the alleged promise was unambiguous.

Ms. Rancilio's established lack of authority defeats Plaintiffs' promissory estoppel claim as to the alleged CEO promise. Plaintiffs cannot show that Rancilio could have foreseen or expected Plaintiffs' reliance on the supposed promise if Ms. Rancilio had no authority to make it. Moreover, Plaintiffs concede that when Ms. Rancilio made the alleged promises to Cora regarding the subsidiary, including the promise to make him its CEO, she made three critical disclosures: (1) that the Rancilio statute did not provide for the formation of a subsidiary; (2) that she was "not in control" and that a subsidiary could not be formed without the support of Rancilio's shareholders and board of directors; and (3) that there was a chance that those parties would not support a United States subsidiary. Given Ms. Rancilio's clear warning that a United States subsidiary might not materialize, Plaintiffs cannot demonstrate that their reliance on her promise was reasonable and justified. *See M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1408 (7th Cir. 1991); *Dougherty v. Akzo Nobel Salt Inc.*, 47 F. Supp. 2d 989, 991 (N.D. Ill. 1999)(applying Illinois law). As a result, the Court need not reach the issue of whether the promise was unambiguous and grants Defendant's motion for summary judgment as to Count I.

## C. Count II - Quantum Meruit

In Count II, Plaintiffs assert a claim for quantum meruit alleging that Cora incurred expenses in maintaining Rancilio's United States office and that Rancilio only reimbursed them for some of these expenses. Plaintiffs argue that by receiving the benefit of Plaintiffs' services without paying their full fair market value, Rancilio has unjustly retained a benefit to Plaintiffs' detriment in violation of principles of justice, equity, and good conscience.

To establish a quantum meruit claim under Illinois law, Plaintiffs must show (1) the performance of services, (2) the reasonable value of those services, and (3) Rancilio's receipt of a benefit from Plaintiff that it would be unjust for it to retain without paying compensation. *Fischer v. First Chicago Capital Mkts., Inc.* 195 F.3d 279, 284 (7th Cir. 1999). Plaintiffs must prove that the services it performed were "of some measurable benefit to the defendant." *Van C. Argiris & Co. v. FMC Corp.,* 494 N.E.2d 723, 726 (Ill. App. Ct. 1986). The parties' dispute centers on whether Rancilio received a benefit from Plaintiff for which Plaintiffs were not compensated.

Plaintiffs allege that they took the following actions toward establishing the United States office for Rancilio's benefit: (1) Cora signed an office lease for Rancilio as "John Cora d/b/a Rancilio U.S.A.," thereby assuming personal liability; (2)

Plaintiffs staffed the office with an Italian Specialties employee, Carmen Cribari, and instructed another Italian Specialities employee, Brian Pearson, to assist Ms. Cribari if necessary; (3) Cora opened a bank account for Rancilio; and (4) Cora supervised the Rancilio business.

Rancilio argues, and Plaintiffs agree, that Plaintiffs invoiced Rancilio for rent, utilities, and Ms. Cribari's wages. The invoices themselves also indicate that Plaintiffs billed Rancilio for deposits into the bank account. As discussed, the parties agree that Rancilio paid all of the amounts invoiced by Plaintiffs with the exception of $34,259, which Rancilio has withheld as a set-off. The burden, therefore, is on Plaintiffs to establish that Rancilio has received a benefit from Plaintiff that it would be unjust for Rancilio to retain without compensating Plaintiff. This they fail to do. Plaintiffs merely point to Exhibit 11 as evidence that Rancilio has not paid for all of the services Plaintiffs performed. With the exception of the $34,259 of unpaid invoices, however, Exhibit 11 identifies no uncompensated services that were of measurable benefit to the Defendant. As a result, Rancilio's motion for summary judgment on the quantum meruit claim is granted.

### D. Count IV - Unjust Enrichment

Finally, Plaintiffs contend that Rancilio was unjustly enriched by their actions in establishing the United States office

and warehouse. To recover under the theory of unjust enrichment, Plaintiffs must demonstrate that Rancilio has unjustly retained a benefit to the Plaintiffs' detriment, and that Rancilio's retention of that benefit violates the fundamental principles of justice, equity and good conscience. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). Rancilio again argues that it retained no benefit to Plaintiffs' detriment because it either paid for the services it received or because the alleged services furnished no benefit to Rancilio. In their Response Brief, Plaintiffs merely rely on the arguments made in support of their quantum meruit claim. Because these arguments also fail to establish what benefits Rancilio has retained to the Plaintiffs' detriment, Rancilio's motion for summary judgment on the unjust enrichment claim is granted.

## CONCLUSION

For the reasons set forth above, Rancilio's Motion for Summary Judgment is **GRANTED** as to Counts I, II, III and IV. Plaintiffs' complaint is dismissed in its entirety.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: July 11, 2003